IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**LUTHER WAYNE DILLON**                                                            **PLAINTIFF**

**V.**                               **Civil No. 3:18-cv-03057**

**JASON DAY, Jail Administrator,**
**Boone County Sheriff's Office**                                      **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Luther Wayne Dillon proceeds in this matter *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983. (Docs. 1, 2, 7). In his Complaint, Plaintiff alleges a violation of his right to confidential conversations with counsel. (Doc. 2). Plaintiff is incarcerated in the Boone County Detention Center.

On November 15, 2018, Defendant Jason Day filed a Motion for Summary Judgment. (Doc. 23). On November 19, 2018, an Order (Doc. 26) was entered directing Plaintiff to file a response to the Motion for Summary Judgment by December 10, 2018. Plaintiff's time to respond to the motion was then extended to December 17, 2018. (Doc. 28).

Plaintiff has not filed a response to the Motion for Summary Judgment. He has not requested an extension of time to file his response. No mail has been returned as undeliverable. Plaintiff has failed to comply with the Court's Order requiring him to file his summary judgment response by December 17, 2018.

Plaintiff was advised that failure to comply with the Court's Order to respond to the Motion would result in: (a) all of the facts set forth by the Defendants in the summary judgment papers being deemed admitted by Plaintiff, pursuant to Local Rule 56.1(c); and/or, (b) this case being subject to dismissal, without prejudice, pursuant to Local Rule 5.5(c)(2). (Doc. 26).

1

The Court must consider the facts set forth in Plaintiff's verified Complaint in ruling on the Motion for Summary Judgment. A verified complaint is the equivalent of an affidavit for summary judgment purposes. *See, e.g., Roberson v. Hayti Police Dep't.*, 241 F.3d 992, 994-95 (8th Cir. 2001). As the Court in *Roberson* points out, "[a]lthough a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit to survive the summary judgment motion." *Id.* The Court will "piece[] together [Plaintiff's] version of the facts from the verified complaint. Those portions of the Defendant['s] statement of material facts that do not conflict with [Plaintiff's verified complaint] are deemed admitted." *McClanahan v. Young*, 2016 WL 520983 (D.S.D. Feb. 5, 2016).

## I. BACKGROUND

The Plaintiff was booked into the Boone County Detention Center ("BCDC") on or about February 6, 2018, on three counts of Rape, one count of Criminal Attempt to Rape, one count of Sexual Assault in the Second Degree, one count of Sexual Indecency with a Child, and one count of Sexually Grooming a Child. (Doc. 25, Ex. A-1 at 5-6). The Plaintiff was arraigned on February 16, 2018, and the Circuit Court's Docket reflects that Plaintiff indicated he would apply for the services of the public defender. (Doc. 25, Ex. C). The Plaintiff's criminal trial was scheduled for the week beginning July 23, 2018. *Id.* BCDC records indicate that the Plaintiff was visited by attorney Ben Burnett on or about February 22, 2018. (Doc. 25, Ex. A-1 at 19).

On February 23, 2018, Plaintiff appeared before the Boone County Circuit Court and indicated that he had hired attorney Justin Downum. (Doc. 25, Ex. C). BCDC records indicate that Plaintiff was visited by attorney Downum on March 7, 2018. (Doc. 25, Ex.

A-1 at 19). On March 13, 2018, Downum entered his appearance in Plaintiff's criminal case. (Doc. 25, Ex. C).

According to Plaintiff's verified Complaint, Downum came to the BCDC on April 5, 2018, to see the Plaintiff. "Someone under Mr. Jason Day" informed him that he would have to wait until there was a space available for him to talk to the Plaintiff. (Doc. 2 at 4). Downum waited for an hour and then left. *Id.* Plaintiff's verified Complaint also states that on April 11, 2018, Downum again visited the BCDC to meet with the Plaintiff. The two actually met that day, but they were not able to talk in private, and an officer was present during the meeting.

According to Plaintiff's deposition testimony, Downum came to the BCDC on April 5, 2018, to meet with him. Downum waited about an hour before leaving because the BCDC did not have a place for him to meet with the Plaintiff. (Doc. 25, Ex. B at 29-30). On April 10 or 11, 2018, Downum came to the BCDC and met with Plaintiff, but they were not able to have a private meeting. The Plaintiff met with Downum for about 30 minutes with an officer present. Plaintiff testified that Downum was fine meeting with Plaintiff with an officer present, but Plaintiff preferred to meet in private. *Id.* at 30-32.

On April 14, 2018, Plaintiff filed a grievance that stated:

> Another question why didn't you let me see my attorney last friday? He said he came up here and set for an hour waiting to see me. That's my right to see my attorney at any time he comes to talk to me that's my constitutional right that you all refused to give me thats a Lawsuit if I decide on pursing it. I did talk to my attorney about it Wednesday when he came again to see me. Just wanted you realize that I do know my Rights especially when im innocent of all my charges been falsely accused!

(Doc. 25, Ex. A-2 at 14).

Defendant Jason Day responded to the grievance on April 16, 2018, stating: "I wasn't here Friday I will look into it. The attorney sign in shows that your attorney didn't sign in to see you that day." *Id.* Plaintiff appealed the response, stating: "I would like to

3

have a copy of the sign in sheet for 04-06-18 thank you." Day responded: "you need to have your attorney send in a FOI request." *Id.*

On April 16, 2018, Plaintiff submitted a request stating, "I would like a copy of sign in sheet for the day of 04/06/2018 Thank you for your cooperation." *Id.* at 15. The same day, Plaintiff submitted another request stating, "I'm sorry Mr. Day it was on Thursday 04/05/2018 and I would like a copy of the sign in sheet for that day instead of 04/06/2018 your cooperation would be greatly appreciated." On April 20, 2018, Day responded to each request with the following message: "which sign in sheet." *Id.* at 15-16.

On April 20, 2018, Plaintiff submitted a requested stating: "Sign in sheet that shows my attorney was here on 04/05/2018 to see me and I didn't get to see him. I want a copy of it. thank you." On April 25, 2018, Day responded, "will look at it for you." *Id.* at 17. Also on April 20, 2018, Plaintiff submitted a second request stating, "No problem will get my lawyer to send FOI request." *Id.* at 18. To that second request, Day responded on April 25, "yes sir." *Id.*

BCDC records indicate that the Plaintiff was visited by Downum in late April, 2018. (Doc. 25, Ex. A-1 at 20). The date and time column on the form only indicates "4:10," but the notation appears between entries made by other attorneys on April 27, 2018 and May 4, 2018. *Id.* The records further indicate that Plaintiff was visited by Downum on May 30, July 6, and August 1, 2018. *Id.*

Plaintiff testified that April 10 or 11, 2018 was the only time he talked to his attorney in a non-private setting. Plaintiff further testified that this has not happened to him, or to other inmates, since that date. (Doc. 25, Ex. B at 44-45). Plaintiff further testified that he is suing Day because he was the supervisor and because he blamed the Boone County Sheriff's Department for not allowing him to meet privately with his attorney on a particular occasion.

4

In addition, Plaintiff testified that he is not aware of a Boone County policy or practice that results in inmates not being able to see their attorneys. (Doc. 25, Ex. B at 44). It is the policy of the BCDC that "inmates [are to] be allowed visitation from outsiders consistent with the safety and security of the facility, its personnel and other inmates. Attorneys and their representatives are to be allowed private access to their clients, limited only by safety and security concerns mentioned above." (Doc. 25, Ex. A-3 at 13-14).

According to Day's Affidavit, attorneys wishing to visit with their inmate clients in the BCDC sign a log sheet which indicates the name of the attorney, the date and time, and the name of the inmate. (Doc. 25, Ex. A at 2). The BCDC has a multipurpose room within the facility. Inmates may meet privately with their attorneys in that area; however, if the room is already being used, inmates may not be able to meet there with their attorneys due to other activity taking place there. *Id.* at 2-3. If the multipurpose room is not available, an inmate may meet with his attorney in other areas of the jail, such as booking, but this may require that an officer be present in the area to assure the safety and security of the facility. The attorney and inmate are given the choice to meet in the presence of the officer or wait until the private area (multipurpose room) is available. *Id.* at 3.

Day was not in the facility on April 5, 2018, when the Plaintiff claims that his attorney came to visit him but had to wait—and eventually had to leave before seeing Plaintiff. According to Day's affidavit, there is no indication on the attorney sign-in log that Plaintiff's attorney signed into the facility on April 5, 2018. *Id.* Day claims he was not aware that Plaintiff and his attorney met in the presence of an officer on April 11, 2018. *Id.* Day further states that there is no indication on the attorney sign-in sheet that Downum signed into the facility on April 11, 2018. *Id.*

Plaintiff's verified Complaint does not state whether he is suing Defendant Day in his individual or official capacity. However, the verified Complaint seeks "punitive damages and exemplary damages against Jason Day and/or Boone County Sheriff's Office for legal rights that has been taken and restitution." (Doc. 2 at 5).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In this case, the facts set forth by Day are deemed admitted except to the extent contradicted by the verified Complaint. The question is whether, given the facts as pieced together by the Court, there are genuine issues of material fact remaining for trial, or whether Day is entitled to judgment as a matter of law.

### III. DISCUSSION

Day claims that he is entitled to summary judgment because there was no constitutional injury caused by him and because Plaintiff has not set forth a claim for official capacity liability.

#### A. Individual Liability

As explained above, Plaintiff's Complaint does not clearly state whether he is suing Day in his individual or official capacity. Without an *express* statement that a defendant is being sued in his individual capacity, "the suit is construed as being against the defendant[] in [his] official capacity." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Further, Plaintiff's deposition testimony makes clear his intent to sue Day because he was a supervisor, and for no other reason. *See* Doc. 25, Ex. B at 41-44. "Liability under Section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 370 (1976)). "Supervisors can be individually liable if they directly participate in a constitutional violation or if they failed to supervise and train officers." *Johnson v. Blaukat*, 453 F.3d 1108, 1113 (8th Cir. 2006). Here, Plaintiff has not alleged that Day failed to supervise others or directly participated in the alleged constitutional injury. Accordingly, Day is entitled to summary judgment as to any individual capacity claim.

### B. Official Capacity

Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). "[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish the liability of an employing governmental entity under section 1983, a "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, a plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Here, Plaintiff has failed to allege or provide evidence of any policy or custom of Boone County that contributed to the alleged violation of his constitutional rights. Accordingly, Day is also entitled to summary judgment on Plaintiff's official capacity claim.

### IV. CONCLUSION

For the reasons stated above, the Motion for Summary Judgment (Doc. 23) of Defendant Jason Day is **GRANTED**. The case is are **DISMISSED WITH PREJUDICE**, and a judgment consistent with this Order will enter.

**IT IS SO ORDERED** on this 18th day of January, 2019.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE